In re CHU POY.

(District Court, N. D. Ohio, E. D. June 26, 1897.)

DEPORTATION OF CHINESE—LABORER—MERCHANT.

A Chinaman, who is a member of a firm of Chinese merchants engaged in buying and selling merchandise at a fixed place of business, and who is sent out by such firm, as an employé, to take charge of another mercantile establishment in which said firm owns a one-half interest, is a merchant, and not a laborer, within the meaning of the act of November 3, 1893, and is not liable to deportation while thus employed.

Samuel D. Dodge, U. S. Atty., and George R. McKay, Asst. U. S. Atty.

Foran & Dawley, for defendant.

HAMMOND, J. The proof in this case is entirely clear that this defendant is neither a skilled nor an unskilled manual laborer, as commonly understood, nor does he come within the enlarged definition of the second section of the amended act of November 3, 1893 (2 Supp. Rev. St. U. S. p. 154), "including Chinese employed in mining, fishing, huckstering, peddling, laundrymen, or those engaged in taking, drying, or otherwise preserving shell or other fish for home consumption or exportation." The only scrap of proof in any way connecting him with employment as a laborer is that on the day he was arrested he

was in attendance at the laundry of a registered Chinaman of this city, called Ah Sam. That is fully explained by the fact that he had the business connections hereinafter mentioned with Ah Sam, in his business of keeping a Chinese merchandise store in the city of Cleveland, at No. 90 Prospect street. On this day, Ah Sam being absent or sick, this defendant was temporarily taking care of the laundry at that moment. The proof of his landlord, and those who know him here in this city, is that he has been, since he came here, employed in the store at No. 90 Prospect street. About that fact there can be not the least doubt; and unless these Chinamen are to be treated differently from ordinary human beings in their helpful relations to each other, or in the associations of business and social life, this temporary help to his business associate is not to be taken as proof of the fact that he is a laborer, in the sense of this statute. When arrested, he had no certificate of registration to produce to the inspector, and it is conceded now that he has none, and never had any. That is undoubtedly a formidable circumstance against him, and would be conclusive under the rule of the statute that he shall affirmatively show his right to be in this country, if the proof showed at all that he was a laborer seeking to evade the provisions of the act. But this circumstance is explained by the proof that at the time of the registration he claimed to be within the exceptions of the statute, and not subject to registration. Perhaps, if he had been wise, or wisely advised, he would have registered, and set at rest all question of his right to be here. But if, at that time, he was within the exceptions of the statute, he cannot now be deported because he did not register. It seems fairly to be established by the proof that as a youth he was employed in the store of Kwong, Chin, Chong & Co., No. 2 Mott street, New York, of which firm his father was a member; and that subsequently, by succession of contract, he came into possession of his father's interest, the father returning to China. This was the situation while he resided in New York, and affords a reason for his not registering at that time. The proof also establishes quite satisfactorily that recently his firm in New York entered into a business connection with Ah Sam, of Cleveland, Ohio, the afore-mentioned registered Chinaman, who conducts at Cleveland both a laundry and a Chinese merchandise store. This arrangement was, in effect, that Ah Sam was to own one-half of the merchandise establishment, and the New York firm the other half. The young fellow who is the defendant in this case was sent out to Cleveland to take care of the interests of the New York firm, to engage in buying and selling as an employé in the Cleveland establishment, and he was to receive a compensasation of $30 per month, and, impliedly, his share of the profits accruing to the firm in New York. This seems to the court to bring him very distinctly within the definition given by the statute of "a merchant engaged in buying and selling merchandise at a fixed place of business, which business is conducted in his name, and who, during the time he claims to be engaged as a merchant, does not engage in the performance of any manual labor except such as is necessary in the conduct of his business as such merchant." Act Nov. 3, 1893 (2 Supp. Rev. St. U. S. p. 154). It is not necessary now to decide the

point, but it is not an unreasonable interpretation of this statute that a Chinaman who is engaged only as a clerk in an established mercantile business, and in no other manual labor than that which is necessary to conduct the business of buying and selling merchandise at a fixed place of business, is in every proper sense "a merchant," and not a laborer, and would be conducting such branch of the business of merchandising as is done by the clerks of a mercantile establishment; and, if he were honestly using his own name in making employments and engagements and in the buying and selling, he would be "conducting the business in his own name," in the sense of this statute. It may be that it was not the intention of congress to limit this exception of "merchants" to the owners of the merchandise which is bought and sold, but also that it comprehends those engaged in and about the business of buying and selling as assistants to the owner, where it is all done openly and honestly, and without any purpose to evade the statute.

Clearly, the purpose of the statute is to protect American against cheap Chinese labor; and it has no intention, apparently, of protecting American merchants, or American merchants' assistants, against cheap Chinese merchants and merchants' assistants. And while the statute, as to a laborer, is very strong and imperative in demanding that he shall be deported if he has not registered, or if he has come into the country in hostility to the statute, or evasion of it, when we get beyond that class of Chinese, and find a man who is clearly not a laborer, and not within the reason and prohibitions of the statute, but is engaged in mercantile life, we are authorized to be more liberal in the interpretation of the statute in favor of the defendant. The statute is harsh enough as to outlawed laborers in its deprivation of the right of trial by jury, the reversal by statutory command of the ordinary laws of evidence, and those familiar provisions for the protection of all persons against whom penalties are decreed, such as the presumption of innocence, the reasonable doubt, and the like, and the statutory rule for the conclusiveness of the want of the certificate, and all that; but it is not within the purview of the statute, nor within the objects to be accomplished, to apply the harshest interpretation of definition as against those who are actually engaged in mercantile life while here, because, as before remarked, it has not been deemed necessary to protect our merchants against Chinese merchants, nor our merchants' clerks against Chinese merchants' clerks, for the reason, probably, that the Chinese could not procure and would not give employment to our own people as clerks in their stores, and it would be depriving them of the privileges of the statute to carry on mercantile business in this country to deprive them of the right to employ Chinamen in the ordinary vocations that are necessary to conduct a mercantile business. But, on the proof we have here, this defendant answers every element of the statutory definition of "a merchant" which we have already quoted, and there can be no doubt as to any of these statutory elements except that of "conducting the business in his own name." He certainly was conducting the business of a merchant's clerk in his own name, but it is argued that because he had in his own name no partnership with Ah

Sam, and because his own name did not appear in the firm style in the New York concern, he was not conducting the business in his own name. . But this is merely sticking in the bark of the words that are used. It appears by the proof that this New York firm is composed of a numerous list of what they call, in their testimony, "partners," and in the list of this New York firm, produced by the government Chinese inspector, who comes from New York as a witness on behalf of the government, there are some 30 or more names of these partners, from which it is said the name of this young man is absent. It shows that that firm, at least, has too many names to go upon the signs and letter heads, and it would be impracticable for each man's name to thus appear; and I should say that, like all merchants, it is open to the Chinese to conduct their mercantile enterprises by corporations and partnership firms, under the designation of the word "company," and that every man who honestly and fairly had an interest as a member of the corporation or the firm would be, in the language of the statute, "conducting the business in his own name." This young man produces a book, and other evidence, from which it appears that he became the successor to his father's interest, and was, at the time of his arrest, one of the members of the firm in New York, and was the member of the firm sent out to Cleveland to watch its interests in the business arrangement with Ah Sam. This makes him a merchant doing business in his own name, in any fair and reasonable sense of the statute. Now, all this may be fabricated testimony, and it may be a trick to protect this man; but it does not appear to be so by any proof here that is at all worthy of judicial consideration. The testimony of the New York inspector, admitted by consent, is the purest and most suspicious of hearsay evidence, not worthy of the least attention, much less belief, coming from any witness; and certainly not when coming from one who is an overzealous prosecutor, bent on sustaining his own prejudiced opinion that the other witnesses are lying. Apart from all the testimony of the Chinese witnesses, the white men who testify show facts and circumstances which imply that he was in fact engaged in mercantile business. He has been doing that kind of business ever since he came to Cleveland, and nothing else, so far as it appears from this proof, except on the one day when he was caught watching his co-partner's laundry, as already stated. There is every indication in all the proof of the citizens of Cleveland who have known and seen him that he has been in good faith engaged in the business which he says he has been engaged in. There are also corroborating facts by the white testimony at New York. The fact that he was there as a boy with his father, and has grown up, so to speak, in the New York store, to the knowledge of the white witness who was the drayman or truckman for the Chinese firm, is a strong corroborating fact of the claim that he has been engaged in mercantile life. The story which he and his Chinese witnesses tell about his mercantile employments is wholly consistent with what we know about him from the white witnesses. Under such circumstances as these, it is my judgment that he should not be deported, and the application is refused.